Robert C. Faber (RF 7020)
Sean P. McMahon (SM 1202)
Ostrolenk, Faber, Gerb & Soffen, LLP
1180 Avenue of the Americas
New York, New York  10036
Phone:  (212) 382-0700
Fax:  (212) 382-0888
E-mail:  rfaber@ostrolenk.com

Attorneys for Defendants/Counterclaim-Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUTURE COMMUNICATIONS CORPORATION OF NEW YORK d/b/a VIRTUAL SERVICE, | Case No.: Civil Action No. 08 CV 01997 (JGK) |
| Plaintiff/Counterclaim-Defendant, | |
| vs. | |
| AMERICAN SECURITY SYSTEMS, INC., and LAWRENCE T. DOLIN, | |
| Defendants/Counterclaim-Plaintiffs. | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

INTRODUCTION .........................................................................................................1

STATEMENT OF FACTS................................................................................................2

ARGUMENT................................................................................................................6

I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER

     OF LAW ...........................................................................................................6

II.  PLAINTIFF HAS THE BURDEN OF ESTABLISHING THAT THE TERM

     VIRTUAL DOORMAN IS NOT GENERIC ............................................................8

III. THE TERM VIRTUAL DOORMAN IS NOT PROTECTABLE AS A

     TRADEMARK ....................................................................................................9

     A.    Generic Terms.........................................................................................9

     B.    Standard for Determining Genericness...............................................12

     C.    Analysis of Evidence............................................................................13

           1.   Newspapers & Magazines.............................................................13

           2.   Advertising & Promotional Materials...........................................17

           3.   Third Party Use ............................................................................18

           4.   Generic Use Outside of New York ................................................19

           5.   Other Generic Use........................................................................20

     D.    Summary Judgment Is Appropriate Based on Widespread Generic Use..........22

IV.       ADDITIONAL COMMENT.............................................................................23

CONCLUSION ...........................................................................................................23

## TABLE OF AUTHORITIES

### CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976) .......6,7,10,11

*America Online, Inc. v. AT & T Corp.*, 243 F.3d 812 (4th Cir. 2001) ..................................7

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)........................................................6

*Banff, Ltd. v. Federated Department Stores, Inc.* 841 F.2d 486 (2d Cir. 1988)................12

*Bayer v. United Drug Co.*, 272 F. 505 (S.D.N.Y. 1921) .............................................11,12

*Bed & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743 (6th Cir.

    1996)....................................................................................................................................7

*Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175 (1st Cir. 1993) ..........................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .....................................................................6

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.* 531 F.2d 11 (2d Cir. 1975)............................7

*Dixi-Cola Laboratories v. Coca-Cola Co.*, 117 F.2d 352 (4th Cir. 1941)........................11

*Door Sys. Inc. v. Pro-Line Door Sys, Inc.*, 83 F.3d 169 (7th Cir. 1996).............................7

*Dupont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (2d Cir. 1936) ....................11

*E.R. Squibb & Sons, Inc. v. Cooper Laboratories,* 536 F.Supp. 523 (S.D.N.Y. 1982).....12

*Eastern Air Lines v. New York Air Lines,* 559 F.Supp. 1270 (S.D.N.Y. 1983)..................7

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56

    (2d Cir. 2000) ..................................................................................................................9

*Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503 (2d Cir. 1997) ......................................9

*Genesee Brewing Co. v. Stroh Brewing Co.*, 127 F.3d 137 (2d Cir. 1997)..................10,11

*Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901 (7th Cir. 1983) ........................................9

*GMT Prod'ns, L.P. v. Cablevision of New York City, Inc.*, 816 F.Supp. 207 (S.D.N.Y. 1976)........................................................................................................................7,9

*Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing & Publishing Co. v. Meredith Corp.,* 991 F.2d 1072 (2d Cir. 1993) ...............................................................9

*Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) ...................................11

*Horizon Mills Corp. v. QVC, Inc.*, 161 F.Supp. 208 (S.D.N.Y. 2001)...............................11

*In re Blinded Veterans Assoc. v. Blinded American Veterans Foundation*, 872 F.2d 1035 (D.C. Cir. 1989)...........................................................................................................6,8

*In re Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143 (9th Cir, 1999)........................................................................................................................8,10

*In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F. 2d 1567 (Fed Cir. 1987)........13

*Interstate Net Bank v. NetB@nk, Inc.,* 221 F.Supp. 513 (D.N.J. 2002) ..............................8

*Johnson & Johnson v. Carter-Wallace, Inc.*, 487 F.Supp. 740 (S.D.N.Y. 1979)..............11

*Kellogg Co., v. National Biscuit Co.,* 305 U.S. 111 (1938)...............................................23

*King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577 (2d Cir. 1963)...............12

*Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934 (7th Cir. 1986)..............8,10

*Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977)..................8

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,* 874 F.2d 95 (2d Cir. 1989)......10,11,13

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2d Cir. 1999)............10

*Primal Feeling Center, Inc. v. Janov,* 201 U.S.P.Q. 44 (T.T.A.B. 1978) .........................12

*Reese Publ'g Co., Inc. v. Hampton Int'l Communications, Inc.*, 620 F.2d 7 (2d Cir. 1980) ..............................................................................................................................7,9

*The Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955 (2d Cir. 1996).................9

*The Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733

(S.D.N.Y. 1997) ................................................................................................9

*United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90 (1918) .....................................22

*Zaratrains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983)................7


**Statutes**

15 U.S.C. § 1114...............................................................................…...4,5

15 U.S.C. § 1125(a)..............................................................................4,5

15 U.S.C. § 1127...................................................................................8,9

N.Y. Gen. Bus. Law Sec. 360........................................................................5

N.Y. Gen. Bus. Law Sec. 360-1.................................................................4,5

N.Y. Gen. Bus. Law Sec. 368-c...................................................................4


**Other Authorities**

RESTATEMENT (THIRD) OF UNFAIR COMPETITION, § 15, cmt.b..........…………...............10


**Rules**

Fed. R. Civ. P. 56(c)...........................................................................…...6


**Treatises**

J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION (4th ed. 2006)...................8,12

**PRELIMINARY STATEMENT**

Defendants, American Security Systems, Inc. ("American Security") and Lawrence T. Dolin ("Dolin") (referred to collectively as "Defendants" unless otherwise specified), submit this Memorandum of Law in support of their Motion for Summary Judgment to dismiss all causes of action identified in the Complaint of Future Communications Corporation of New York d/b/a Virtual Service ("Plaintiff"), on the ground that Plaintiff's purported mark, VIRTUAL DOORMAN, is not entitled to trademark protection, as a matter of law, because the term is a generic, common, apt name used by many unrelated entities including Plaintiff for describing the services they perform and the goods used in their performance.

**INTRODUCTION**

Plaintiff, a relative newcomer to the security system industry, claims as its proprietary mark a term – "virtual doorman" – which already was in widespread and therefore generic use in the industry for many years before the Plaintiff tried to appropriate the generic term from the public domain and claim Plaintiff's mark. In fact, the term virtual doorman continues to be used nationwide as a common term in the security industry for a virtual doorman service like Plaintiff's.

It is a fundamental principle of trademark law that one may not appropriate a commonly used generic term or apt name of a product – such as "car," "hotel," "donut," or "hamburger" – as a trademark, to thereby exclude others from making commercial use of the term. Nonetheless, Plaintiff attempts to appropriate the

generic term virtual doorman, and assert in this action that Defendants may not use the quite different mark VIDEO DOORMAN to describe Defendants' security and monitoring devices and services.

Plaintiff's trademark infringement and dilution claims fail as a matter of law, because there is no genuine issue of material fact regarding the status of the term virtual doorman as generic within the security system industry. The genericness of the term is established by the widespread generic use of the term virtual doorman in newspapers and magazines, advertisements, third party use and elsewhere.

## STATEMENT OF FACTS

Plaintiff is engaged in the business of developing, customizing, installing and monitoring security and surveillance systems and has offered goods and services under its purported trademark VIRTUAL DOORMAN since at least as early as 2001. *See* Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SUMF") ¶ 2.

Plaintiff's system and services are sold primarily to residential users, and often marketed in connection with luxury buildings. SUMF ¶ 6.

Plaintiff's system is a secure remote monitoring and control system that is integrated with other building-wide systems. SUMF ¶ 7. The system permits and restricts entry, delivery of packages and other functions. SUMF ¶ 8.

American Security is in the business of supplying security and alarm systems. SUMF ¶ 5. Dolin is the chief executive officer of American Security. SUMF ¶ 4.

American Security, through the undersigned attorney, on the basis of use dating back to April, 2007, filed with the United States Patent and Trademark Office ("USPTO") Trademark Application Serial No. 77/067,418 on December 19, 2006 for the mark VIDEO DOORMAN in International Class 45 for:

> electronic monitoring of building entry ways for security purposes, namely, remote video monitoring through a system connected to a central station for monitoring or accepting deliveries of packages and other items.

SUMF ¶ 9.

On the basis of use dating back to June 30, 2001, Plaintiff filed with the USPTO Trademark Application Serial No. 77/076,929 on January 5, 2007 to register the generic term VIRTUAL DOORMAN as a proprietary trademark in International Class 9 for:

> security and surveillance systems, namely, audio and video equipment in the nature of video monitors, surveillance cameras, video intercoms, modems and routers, video code cards, speakers, microphones, intercoms, software for operating and interacting with surveillance systems; security and surveillance computer programs for the enabling or prevention of building access; biometrics equipment, namely, biometrics scanners for locking and unlocking entryways and permitting use of systems; remote entry and locking equipment in the nature of biometric locks and locks controlled over IP; proximity sensors; security and surveillance systems, namely, electronic regulating and control devices for remote operation of HVAC, lighting, elevators, alarms, sirens, gates, locks, audio video equipments, such as televisions, stereos, computers, telephones, all for residential buildings and homes; security and surveillance systems, namely,

electronic regulating and control devices for the
same; none of the above for use with vehicles.

SUMF ¶ 5.

Plaintiff's application for registration was refused registration by the
USPTO based on, *inter alia*, Defendant American Security's previously filed Application
Serial No. 77/067,418. SUMF ¶ 10.

Plaintiff, by its counsel, sent American Security a "cease and desist" letter
dated May 21, 2007 alleging, *inter alia*, that American Security's use of the mark VIDEO
DOORMAN is confusingly similar to Plaintiff's generic term and purported mark
VIRTUAL DOORMAN. *See* the May 7, 2008 Declaration of Sean P. McMahon
("McMahon Decl.") ¶ 8, Exh. F.

Defendant American Security's counsel replied to Plaintiff's cease and
desist letter in a letter dated June 1, 2007, denying the claims made by Plaintiff.
McMahon Decl. ¶ 9, Exh. G.

On February 1, 2008 Defendant filed an opposition to Plaintiff's
Application Serial No. 77/067,418 with the USPTO Trademark Trial and Appeal Board
("TTAB"). McMahon Decl. ¶ 10, Exh. H..

On February 28, 2008 Plaintiff filed its Complaint in this action alleging
federal unfair competition under 15 U.S.C. §§ 1114 and 1125(a), trademark infringement
and unfair competition under New York General Business Law Sec. 368-c, and
trademark infringement under New York General Business Law Sec. 360-1. McMahon
Decl. ¶ 3, Exh. A.

On April 25, 2008 Plaintiff filed it First Amended Complaint in this action alleging federal unfair competition under 15 U.S.C. §§ 1114 and 1125(a), trademark infringement and unfair competition under New York General Business Law Sec. 360, and dilution under New York General Business Law Sec. 360-1. McMahon Decl. ¶ 4, Exh. B.

For purposes only of Defendants' Motion for Summary Judgment and to avoid any issue of material fact from having to be decided for this motion (genericness being a matter of law based on documentary evidence of actual generic uses), Defendants acknowledge:

1.    The marks VIRTUAL DOORMAN and VIDEO DOORMAN are confusingly similar. SUMF ¶ 11.

2.    Defendant American Security adopted, uses and applied to register the mark VIDEO DOORMAN with knowledge of Plaintiff's goods and services offered under the term VIRTUAL DOORMAN, and with knowledge of Plaintiff's advertising that includes non-distinctive, descriptive and laudatory terms. SUMF ¶ 12.

3.    Some, but not all, of the appearances of the term VIRTUAL DOORMAN concern security systems or services supplied by Plaintiff but without identifying Plaintiff. SUMF ¶ 13.

As Plaintiff's purported mark VIRTUAL DOORMAN is generic, it is not entitled to trademark protection, as a matter of law, so there is no genuine issue of material fact to be determined at trial.

**ARGUMENT**

**I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW**

Summary judgment is appropriate in trademark infringement cases, as elsewhere, when the submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need of a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The court is required to give all reasonable inferences to a non-moving party, but summary judgment is appropriate where the evidence of record "is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

With regard to the classification of trademarks as generic, merely descriptive, suggestive or arbitrary, the Second Circuit has acknowledged that "[t]he lines of demarcation are not always bright." *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976). "These categories, like the tones in a spectrum, tend to blur at the edges and merge together. The labels are more advisory than definitional, more like guidelines than pigeonholes." *In re Blinded Veterans Assoc. v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1041 (holding term BLINDED VETERANS generic, as a matter of law, for former members of armed forces who have lost their

-6-

vision) (D.C. Cir. 1989) (citing *Zaratrains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983)).

Nevertheless, "as with any question of fact [the classification of a trademark] can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt as to how the question should be answered." *Door Sys. Inc. v. Pro-Line Door Sys, Inc.*, 83 F.3d 169, 171 (7th Cir. 1996) (citing *Bed & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996); *Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir. 1993)).

This concept is well-established in courts in this Circuit. *See, e.g., Abercrombie & Fitch*, 537 F.2d at 9-10 (holding term SAFARI generic, as a matter of law, for certain types of wearing apparel); *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.* 531 F.2d 11, 14 (2d Cir. 1975) (holding term CONSUMER ELECTRONICS MONTHLY generic, as a matter of law, for magazine devoted to consumer electronics); *Reese Publ'g Co., Inc. v. Hampton Int'l Communications, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980) (holding term VIDEO BUYERS GUIDE generic, as a matter of law, for magazine promoting sale of video products); *GMT Prod'ns, L.P. v. Cablevision of New York City, Inc.*, 816 F.Supp. 207, 211-12 (S.D.N.Y. 1976) (holding term THE ARABIC CHANNEL generic, as a matter of law, for cable television programming in Arabic); *Eastern Air Lines v. New York Air Lines*, 559 F.Supp. 1270 (S.D.N.Y. 1983) (holding AIR SHUTTLE to be generic, as a matter of law, for airplane services).

Similarly, federal courts in other Circuits have made determinations of genericness on motions for summary judgment. *See, e.g., America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 818-23 (4th Cir. 2001) (affirming district court's award of summary

judgment in respect to the genericness of the terms YOU HAVE MAIL and IM, but reversing as to BUDDY LIST); *In re Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1150-52 (9th Cir, 1999) (affirming district court's award of summary judgment ruling that term FILIPINO YELLOW PAGES is generic for classified telephone directories intended for target audience of Filipino-American community); *In re Blinded Veterans Assoc.,* 872 F.2d at 1041 (holding term BLINDED VETERANS generic for former members of armed forces who have lost their vision); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938-41 (7th Cir. 1986) (affirming district court's award of summary judgment ruling the term LIQUID CONTROLS is generic for devices that dispense and mix liquids); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977) (affirming district court's award of summary judgment ruling that the term LITE is generic for low-calorie beer), *Interstate Net Bank v. NetB@nk, Inc.,* 221 F.Supp. 513, 517-18) (D.N.J. 2002) (holding term NETBANK to be generic for internet banking services).

As shall be shown below, the term at issue, virtual doorman, is not entitled to trademark protection, as a matter of law, and there is no genuine issue of material fact.

## II.    PLAINTIFF HAS THE BURDEN OF ESTABLISHING THAT THE TERM VIRTUAL DOORMAN IS NOT GENERIC

The primary function of a trademark is to distinguish the goods or services of one seller from those sold or provided by others.   15 U.S.C. § 1127; J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 12:1 (4th ed. 2006). If the mark lacks this origin-distinguishing quality, it is not entitled to trademark protection. To succeed on a federal claim for trademark infringement, the plaintiff must, as an initial

matter, show that it has a valid mark that is entitled to protection. *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1508 (2d Cir. 1997); *The Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir. 1996); *The Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 742 (S.D.N.Y. 1997).

Because Plaintiff's purported mark is unregistered, it has the burden of proving the mark is not generic. A plaintiff must "demonstrate that it has a valid mark entitled to protection" and only after a plaintiff has met this initial burden may a court consider whether the accused's use of the mark is "likely to cause confusion." *Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing & Publishing Co. v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir. 1993); *see also EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 62 (2d Cir. 2000) ("A plaintiff claiming unfair competition under § 43(a) must show that it owns a valid trademark eligible for protection"). Where, as here, the mark is not registered, the burden is on Plaintiff to prove that its mark is a valid trademark. *Reese Publ'g,* 620 F.2d at 11; *GMT Prods.,* 816 F. Supp. at 210.

## III.    THE TERM VIRTUAL DOORMAN IS NOT PROTECTABLE AS A TRADEMARK

The term VIRTUAL DOORMAN is used generically as an apt name for goods and services in the security industry.

### A.    Generic Terms

As set forth in the Lanham Act, a trademark functions "to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Such words

or phrases are entitled to varying degrees of protection depending on whether they are classified as (1) generic, (2) merely descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Genesee Brewing Co. v. Stroh Brewing Co.*, 127 F.3d 137, 142 (2d Cir. 1997); *Abercrombie & Fitch,* 537 F.2d at 9; *In re Filipino Yellow Pages,* 198 F.3d at 1150-52 .

A term is generic when it refers to the genus or class of product, rather than a particular product; in other words, a generic term can be used to name a type of goods. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,* 874 F.2d 95, 100 (2d Cir. 1989); *Abercrombie & Fitch*, 537 F.2d at 9. That is, "unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is a species." *Liquid Controls Corp.,* 802 F.2d at 936 (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir. 1983); *Abercrombie & Fitch*, 537 F.2d at 9). As stated by the Second Circuit:

> It is a bedrock principle of trademark law that no trader may acquire the exclusive right to the use of a term by which the covered goods or services are designated in the language. Such a term is "generic." Generic terms are not eligible for protection as trademarks; everyone may use them to refer to the goods they designate. This rule protects the interest of the consuming public in understanding the nature of the goods offered for sale, as well as fair competition in the marketplace among competitors by insuring that every provider may refer to his goods as what they are.

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999) (citations omitted). *See also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION, § 15, cmt.b ("A seller cannot remove a generic term from the public domain and cast upon competitors the burden of using an alternative name."). A generic term is never entitled to protection as a trademark, "no matter how much money and effort" a party has invested

in the term. *Genessee Brewing*, 124 F.3d at 143 (quoting *Abercrombie & Fitch*, 537 F.2d at 9).

The federal courts have held terms to be generic, and therefore unprotectable, in two broad categories of cases. *Horizon Mills Corp. v. QVC, Inc.*, 161 F.Supp. 208, 213 (S.D.N.Y. 2001). One such category involves situations where a seller has an established trademark, but the public has come to appropriate the name of the product as a type of product; *i.e,* situations where a mark has "fallen into genericness." *Id.* Examples of terms held to have "fallen into genericness" include "aspirin" for acetyl salicylic acid, "cellophane" for transparent plastic sheets and films, and "Murphy Bed." *Id.* at 214 (citing *Bayer v. United Drug Co.*, 272 F. 505 (S.D.N.Y. 1921) (holding the term ASPIRIN had become generic); *Dupont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (2d Cir. 1936) (holding the term CELLOPHANE had become generic) *Murphy Door Bed* (holding MURPHY BED to be generic)).

The other category of "genericness" cases involves terms that are challenged as having been generic from their inception. *Horizon Mills*, 161 F.Supp. at 213. Well-known examples of such terms include COLA for a type of soft drink, BABY OIL for mineral oil, and HOG for motorcycles. *Id.* (citing *Dixi-Cola Laboratories v. Coca-Cola Co.*, 117 F.2d 352 (4th Cir. 1941) (COLA held generic from its inception); *Johnson & Johnson v. Carter-Wallace, Inc.*, 487 F.Supp. 740 (S.D.N.Y. 1979) (BABY OIL held generic from its inception); *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) (HOG held generic from its inception)). In such cases, "[a]n individual challenging the mark need only establish that the term is generic through an examination of the term itself." *Id.*

-11-

The term virtual doorman falls into both categories of terms that are generic from its inception and also generic because the relevant public has appropriated it and used it as a name. It is not a term which has fallen into genericness; rather, Defendants' position is that the term is inherently generic. It is the apt name for that service.

### B.    Standard for Determining Genericness

The test for genericness centers on a term's "primary significance" to the buying public – and whether the public associates a given term with a type of product, or the source of a product. *See King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 579-81 (2d Cir. 1963); *Bayer,* 272 F. at 509. Evidence of genericness may come from a variety of sources, including (1) competitors' use; (2) newspapers and other publications; (3) listings in dictionaries and trade journals; (4) competent testimony of persons in the trade; (5) plaintiff's use; and (6) consumer surveys. *See* McCarthy, § 12:13.    Based on such evidence, several appellate courts have affirmed summary judgments finding purported marks generic.

A simple test of genericness of a term is whether it is used as a noun, the name of a product or service, or as an adjective, which modifies a noun. *See, e.g., Primal Feeling Center, Inc. v. Janov,* 201 U.S.P.Q. 44 (T.T.A.B. 1978).    For example, "cellophane" is a noun, not an adjective for "plastic." "Escalator" is a noun, not an adjective for a moving stairway. Indeed, in defining the meaning of the term "generic," courts in this Circuit have used the term descriptive in a definition. *See, e.g., Banff, Ltd. v. Federated Department Stores, Inc.* 841 F.2d 486, 489 (2d Cir. 1988) (a generic term is "a common description of the goods"); *E.R. Squibb & Sons, Inc. v. Cooper Laboratories,*

536 F.Supp. 523, 527 (S.D.N.Y. 1982) ("a 'generic term' is one which is a 'common descriptive name'").

One does not say, "I traveled on an Escalator moving stairway." One typically says, "I took the escalator." The term virtual doorman is commonly and routinely used as a noun, making the term virtual doorman generic for goods and services in the security industry.

### C.    Analysis of Evidence

The evidence, identified and discussed below, demonstrates that that the term virtual doorman is a generic identifier, rather than an identifier of Plaintiff or its goods and services.

### 1.    Newspapers & Magazines

Media reports amply document the widespread use of "virtual doorman" as a term without trademark significance. For example, in *Murphy Door Bed* descriptive use of a term in newspapers and magazines was held a strong indication of public perception and evidence that the term is generic. In *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F. 2d 1567 (Fed Cir. 1987) articles found on the NEXIS ® database were relevant to prove the generic nature of a term.

Plaintiff has said that several, but not all, of the uses of the term virtual doorman by third parties were referring to Plaintiff's system. First Amended Complaint ¶ 30. Regardless whether or not the uses are a "reference" to Plaintiff's system are irrelevant because the third party used the term in such a way that it not identify the term as a trademark or as anyone's property or as a product of a particular supplier. Anyone, except Plaintiff, and maybe the Plaintiff's customer, would have no reason to suspect the

term was intended to refer to Plaintiff's trademark or product. A reader would identify the term merely as a generic name of a product. Therefore, the identity of the supplier of a particular security system is irrelevant. Moreover, the term virtual doorman does not appear in a different typeface or form different from ordinary text. The term virtual doorman appears as a simple name or description – not a proprietary trademark.

In 1998, The Wall Street Journal featured an article, titled *Gifts: Masterminding the Mazes of Package Delivery*, discussing alternatives to having packages delivered when residents are not at home to accept delivery. The article states that a woman named Susan Rybak of Manhattan was developing a "virtual doorman" that would allow visitors to leave packages or pick up items from a locked box that an owner could control remotely through the internet. McMahon Decl. ¶ 45, Exh. QQ. This article demonstrates that at least some three years prior to Plaintiff's alleged first use of its purported mark the term virtual doorman was used as a generic identifier to describe a type of product, not a specific product, or product of any particular manufacturer.

In 2001, The New York Times featured an article about the construction of a condominium located at 61 North More Street in New York and, in particularly, the security system installed in the building. McMahon Decl. ¶ 11, Exh. I. The article, titled *POSTINGS: At 61 North More Street in TriBeCa; Virtual Doorman for New Condos*, described that "a 'virtual doorman'" could allow an operator at an off-site alarm company to accept packages, despite the fact a resident may not be home. Although the article did not identify the manufacturer of the virtual doorman system installed in the building it said that the "cost of the virtual doorman" was $80,000. The generic use of the term

virtual doorman in this article demonstrates that the public associates the term virtual doorman with a *type* of product, not with any particular system or manufacturer.

A Businessweek article profiling Plaintiff's goods and services also categorized the remote monitoring system as a "virtual doorman," using the term as a noun, the name of a type of security system. McMahon Decl. ¶ 12, Exh. J. The headline of the article, titled *It's Carlton, Your Cyber Doorman,* indicates "a startup has created a virtual doorman to replace the welcoming smile and cost of a person in the lobby." In setting out the cost benefits of Plaintiff's system the article says "a bigger reason for a virtual doorman is money." The term is part of the descriptive text, not set out as a trademark. Again, the generic use of the term virtual doorman in this article demonstrates that the public associates the term virtual doorman with a *type* of product, not with any particular system or manufacturer.

An article in "The COOPERATOR The Co-op & Condo Monthly" heralds how modern technology has led to the development of automated doorman systems. McMahon Decl. ¶ 13, Exh. K. The article, titled *Technology Greeting You at Your Door*, quotes Jeffrey Bennett, a principal of R&B Development, who stated that "having a virtual doorman adds value to a location because they provide a sense of security and more." He also stated, "people are starting to hear about virtual doormen and know what it offers." The plural of virtual doorman is virtual doormen. Apt names of products or nouns are sometimes plural when there may be more than one. Trademarks do not change as their quantity increases. The article explains that "a 'virtual' doorman basically can acknowledge and respond to a visitor or delivery person 24 hours a day, seven days a week, via an electronic intercom and live video feed that is

manned at a central station" and that "some virtual doorman systems also allow residents to submit photographs of regular or future guests to be stored in the system's memory." The article indicates that the term purports to be "trademarked" by Plaintiff, but consistently uses the term virtual doorman generically throughout the article to refer to a *type* of security system, not a specific make or model of a security system.

The New York Times recently profiled the remote monitoring security systems of "Cyber Doorman" and Plaintiff's "Virtual Doorman", and categorized both as a "virtual-doorman" service. McMahon Decl. ¶ 14, Exh. L. For example, the article, titled *Here's Looking At You*, refers to "Cyber Doorman" as a "virtual-doorman service based in the South Bronx." The article consistently refers to a remote monitoring security system as a "virtual doorman", by stating that "virtual-doorman services first appeared in New York about seven years ago," "virtual-doorman services have been installed mainly at buildings with fewer than 40 apartments," and "virtual-doorman systems can range from very basic services with a few cameras . . ." The article concludes by stating that "residents can find it reassuring when a virtual doorman they have never met calls them by name and opens the door for them." The lumping of two competing services into the general category of virtual doorman services demonstrates that the public associates the term virtual doorman with a *type* of product, not with the manufacturer of the security system.

A New York Post article, titled *JUST SOLD! The Latest Info About Recent Sales – In Your Back Yard and Beyond*, reporting recent sales of residential property reported that at 135 West 14th Street in New York the "building features a virtual doorman and keyed elevator." McMahon Decl. ¶ 15, Exh. M. Another New York

Post article, titled *Gimme Shelter*, reported that a building at 163 Charles Street in New York features "a virtual doorman/concierge" as a feature of the building. McMahon Decl. ¶ 46, Exh. RR. Likewise, the generic use of the term virtual doorman in these articles also demonstrates that the public associates the term with a type of product.

**2.    Advertising & Promotional Materials**

Advertisements and promotional materials for apartment buildings also amply document the widespread use of the term "virtual doorman" as a term without any trademark significance. For example, advertisements for the sale or lease of an apartment will often identify the types of security in a building. Such advertisements and promotional material, identified and discussed below, demonstrate that the public associate the generic term virtual doorman with a *type* of security system, not with a particular product or manufacturer.

An internet advertisement for an apartment located at 133 West 4th Street in New York identifies, *inter alia*, "Virtual Doorman/Drop-Off Service" as a feature of the building. McMahon Decl. ¶ 16, Exh. N.

An internet advertisement for an apartment located at 19-21 Warren Street in New York identifies, *inter alia*, a "virtual doorman security" as a feature of the building. McMahon Decl. ¶ 17, Exh. O.

An internet advertisement for an apartment located at 50 West 127th Street in New York identifies, *inter alia*, as one of "The Extras" a "Virtual doorman for added convenience and security (at all times when doorman is not on duty)." McMahon Decl. ¶ 18, Exh. P.

An internet advertisement for an apartment located at 283 West Broadway in New York identifies, *inter alia*, the "security and privacy of a virtual doorman system" as a feature of the building. McMahon Decl. ¶ 19, Exh. Q.

An internet advertisement for an apartment located at 479 West 152nd Street in New York identifies, *inter alia*, the "security and convenience of a state of the art virtual doorman" as a feature of the building. McMahon Decl. ¶ 20, Exh. R.

An internet advertisement for an apartment located at 469 West 152nd Street in New York identifies, *inter alia*, the "security and convenience of a state of the art virtual doorman" as a feature of the building. McMahon Decl. ¶ 21, Exh. S.

An internet advertisement for an apartment located at 135 West 14th Street in New York states that the "intimate lobby, complete with a virtual doorman, offers unique finishes . . ." McMahon Decl. ¶ 22, Exh. T.

The internet web site for The Alycia, an apartment building located at 304 West 114th Street in New York, states that "building access is via a virtual doorman." McMahon Decl. ¶ 23, Exh. U.

An advertisement for the lease of an apartment on Jane Street in New York states the "building has a virtual doorman." McMahon Decl. ¶ 24, Exh. V.

All of the above references demonstrate that the term virtual doorman is used as a generic term identify a *type* of product, not a specific product, or product of any particular manufacturer.

### 3.    Third Party Use

In addition to the generic uses identified and discussed above, as long ago as 1996, some five years prior to Plaintiff's alleged first use of its purported mark, the

New York Times reported that a "virtual doorman" service was offered by a Mail Boxes Etc. ("MBE") branch at 96th Street and Broadway in New York. McMahon Decl. ¶ 27, Exh. Y. According to the New York Times articled titled *NEW YORKERS & CO.; 'Virtual Doormen' Who Accept Real Packages* the "virtual doorman" services included signing for packages, holding packages for others, accepting dry cleaning and calling customers to advise of deliveries.

MBE was acquired in 2001 by United Parcel Service ("UPS"). McMahon Decl. ¶ 28, Exh. Z. MBE and UPS Stores continue to offer a "virtual doorman" service. McMahon Decl. ¶¶ 29-39 , Exhs. AA-KK. The virtual doorman service offered by MBE and UPS is a service whereby a customer signs up for an account, provides the address of an MBE or UPS Store as the delivery address, and MBE or the UPS will act as a "doorman" who will accept packages from messengers, private deliveries and courier services, and notify customers of delivery. *See* "What is the Virtual Doorman Service?" and "How does it work?" McMahon, Decl. ¶ 29, Exh. AA.

The New York Times, MBE and UPS use the term virtual doorman generically. The term virtual doorman is used to identify a *type* of service for securely accepting delivery of packages. It is not used as a modifier to describe a package delivery service nor as a source identifier. This third party use demonstrates that the term virtual doorman was a generic term with respect to a feature of Plaintiff's product prior to Plaintiff's alleged first use of its purported mark.

## 4.    Generic Use Outside of New York

The term virtual doorman is also understood to be a generic term used to identify a type of security system in buildings outside of New York. For example, the

internet web site for The Commons in Lexington Center, an apartment complex in Lexington, Massachusetts, indicates that "the entrance will be secure with the assistance of a 'virtual doorman.'" McMahon Decl. ¶ 25, Exh. W.

A press release for The Woods at Newtown, an apartment complex in Newtown, Connecticut, states that "a cyber or virtual doorman system will work as a remote attendant by connecting with a central monitoring center." McMahon Decl. ¶ 26, Exh. X.

The internet web site for Impluvium, an apartment complex in Seattle, Washington, states that a "dramatic entrance features a secure controlled virtual doorman." McMahon Decl. ¶ 47, Exh. SS.

The term virtual doorman was used generically, as a noun, by Professor John Illingworth on the University of Surrey web site by stating "Friend or Foe? a virtual doorman" in suggesting a possible student project on image processing.    McMahon Decl. ¶¶ 43-44, Exhs. OO-PP. This generic use demonstrates that the term virtual doorman is also understood to be a generic term outside the United States.

### 5.    Other Generic Use

Brownstoner.com is a site about Brooklyn real estate and renovation, and all the tangential topics that impact life inside and outside the home in Brooklyn. McMahon Decl. ¶ 50, Exh. VV.   On October 2, 2007 the web site featured The Heritage at Park Slope as the "condo of the day."  McMahon Decl. ¶ 51, Exh. WW.  A user posted a question on the web site asking "what exactly is a 'Virtual Doorman?'" Another user responded that a "virtual doorman is *simply* [a] television intercom system" (emphasis

added).  These messages demonstrate that the public associates the term virtual doorman with a type of security system, not with any particular security system or manufacturer.

A "blog" entry on the New York Post web site identifying "favorite open houses" listed an apartment at 220 West 111th Street in New York. McMahon Decl. ¶ 40, Exh. LL.  According to the entry, "[t]he restored, century-old building comes with a bike room, laundry room and virtual doorman." Another blog entry on the New York Post web site also refers to the term virtual doorman generically.  McMahon Decl. ¶ 52, Exh. XX, Page 4.  In both instances, the term virtual doorman is used generically to refer to a *type* of security system, not a specific make or model of a security system, or any particular manufacturer.

Daily Candy is a free daily e-mail newsletter and web site, that claims to be the "insider's guide to what's hot, new and undiscovered – from fashion and style to gadgets and travel." McMahon Decl. ¶ 48, Exh. TT.  A March 27, 2001 article, titled *All the World is Not a Stage*, published on the web site reviewed a karaoke bar named Japas on St. Mark's Place in New York.  McMahon Decl. ¶ 49, Exh. UU.  The review stated "[t]hey have a virtual-doorman thing going on" and went on to say that "[y]ou ring a bell, smile pretty for the camera, and wait to be buzzed in."  The term virtual doorman is not used to refer to any security system or manufacturer in particular, but rather generically to refer to a *type* of security system that allows access to a property through the use of cameras and an intercom system.

Another "blog" entry on engadget.com discussed the rising use of virtual doormen.  McMahon Decl. ¶ 41, Exh. MM.  The entry states that "virtual doormen aren't exactly new" and that "virtual doormen can still let tenants into their room, allow

deliveries to be made and keep disgruntled in-laws out." Here, the term virtual doorman, used in the plural, is again used generically to identify a *type* of product or service.

Another "blog" entry on marketing.fm queried whether having a virtual doorman service added value to a property.  McMahon Decl. ¶ 42, Exh. NN. The "blogger" named Eric, stated that he "recently read about Virtual Doormen becoming more of a reality." He opined that "we may start seeing more oversight and integrated virtual doorman systems."  Again, here, the term virtual doorman, used both in the singular and plural, is used generically to identify a *type* of product or service.

### D.    Summary Judgment Is Appropriate Based on Widespread Generic Use

The demonstrated widespread use of the term virtual doorman is incontrovertible and is compelling evidence that the term is a generic identifier, rather than an identifier of Plaintiff or its goods and services.  On this basis, summary judgment should be granted in Defendants' favor.  Summary judgment is particularly appropriate in this case where there is evidence that the term virtual doorman was used some five years prior to the date Plaintiff alleges it adopted its purported mark.

It is apparent from the demonstrated widespread generic use of the term virtual doorman, which Plaintiff seeks to appropriate, that the term rightfully belongs in the public domain, where it has been in continuous and growing use for a number of year. As Professor McCarthy noted, "[T]o grant an exclusive right to one firm of the use of the generic name of a product would be the equivalent of creating a monopoly in that product, something that the trademark laws were never intended to accomplish." McCarthy §12:2; *See United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90 (1918)

-22-

("There is no such thing as  property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed . . . [T]he right to a particular mark grows out of it sue, not its mere adoption . . ."); *Kellogg Co., v. National Biscuit Co.,* 305 U.S. 111 (1938) (public policy directs generic terms to remain in the public domain, outside trademark protection).

## IV.    ADDITIONAL COMMENT

Plaintiff's counsel, during the attorneys' conference on April 15, 2008, remarked to Defendants' attorney that Defendants could change the trademark from the challenged VIDEO DOORMAN.  That is not an issue here.  Why should Defendant even have to consider changing?  Plaintiff is seeking to enforce an unenforceable and appropriated generic term.  Why should Defendant be inconvenienced by such an unjustifiable offer?  Defendants' term is different in appearance, pronunciation and meaning from Plaintiff's.  So, non-confusion is an undecided question. Plaintiff could have chosen a non-generic term, but instead, seeks to stop Defendants, not only from using a non-generic term, but clearly a different one from Plaintiff's generic term. Plaintiff's counsel cited to a third party competitor, which uses the trademark CYBER DOORMAN, and says it has no objection to that term.  In meaning, and in the world of computers, CYBER and VIRTUAL are much more similar than VIDEO is to either of them.  It appears that Plaintiff is really concerned about a successful competitor with a quite different name that is selling a more desired product to the same class of customers.

## CONCLUSION

As clearly demonstrated by the evidence presented, Plaintiff's purported mark "virtual doorman" is generic and not entitled to trademark protection.

Consequently, there can be no infringement thereof by Defendants, and summary judgment is warranted as a matter of law. Accordingly, Defendants respectfully move the Court to enter a judgment in favor of Defendants and against Plaintiff: (a) dismissing all counts of Plaintiff's complaint; (b) declaring the term "virtual doorman" to be an unprotectable generic term; and (c) direct the USPTO to refuse registration of Plaintiff's application to register the generic term "virtual doorman" as a trademark.

Dated:  May 7, 2008
        New York, New York

Respectfully submitted,

_____

Robert C. Faber (RF 7020)
Sean P. McMahon (SM 1202)
Ostrolenk, Faber, Gerb & Soffen, LLP
1180 Avenue of the Americas
New York, New York  10036
Phone:  (212) 382-0700
Fax:  (212) 382-0888
E-mail:  rfaber@ostrolenk.com

Attorneys for Defendants/Counterclaim-
Plaintiffs

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served upon counsel for Plaintiff/Counterclaim-Defendant by ECF and First Class mail, postage prepaid, on this 7th day of May, 2008, addressed as follows:

Zeynel Memed Karcioglu
Zeynel Karcioglu, Esq.
36 East 20th Street
New York, New York  10003

_____

Robert C. Faber