UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

FUTURE COMMUNICATIONS CORPORATION          08-cv-01997 (JGK)
OF NEW YORK d/b/a VIRTUAL SERVICE

                              Plaintiff,

      -against-

AMERICAN SECURITY SYSTEMS, INC.,
and LAWRENCE T. DOLIN
                              Defendant
_____x

**Plaintiff's Opposition to Defendants' Motion for Summary Judgment**

**Preliminary Statement**

Defendants in this action, American Security Systems, Inc. ("American Security") and its president Larry Dolin ("Dolin") (collectively, "Defendants") have engaged in wholesale copying and imitation of Plaintiff's trademark VIRTUAL DOORMAN, along with Plaintiff's slogans "SAME SERVICES AS A DOORMAN, AT A FRACTION OF THE COST", "TOTAL SECURITY SOLUTIONS," and "TOTAL SECURITY INTEGRATION" in promotional and advertising materials. At all times relevant to this action, Defendants have been aware of Plaintiff's exclusive and successful use of VIRTUAL DOORMAN in connection with security systems, and now seek to capitalize on Plaintiff's goodwill, innovation and public recognition by using an imitation "Video Doorman" designation in connection with security systems.

Contrary to Defendant's claims, VIRTUAL DOORMAN is a strong mark, and is suggestive of security, advanced technology, and superior customer service. Given Plaintiff's leadership position in this industry and the success of its VIRTUAL DOORMAN security system, it is no wonder that Defendant adopted *Video* Doorman, as the name of its own less-expensive and less sophisticated alarm system in an effort to mimic VIRTUAL DOORMAN; the "Video Doorman" designation is similar in sight and sound to Plaintiff's VIRTUAL DOORMAN, and is used in connection with a similar, if not identical product. Given the wealth of other marks it could have used to name its product and its knowledge of Plaintiff's use and success, Defendant's intentional copying is telling, and must be enjoined.

## Brief Statement of Material Facts

It is clear from the evidence uncovered to date (and in part admitted by Defendants) that:

1. Defendants were aware of the Plaintiff's use of the mark VIRTUAL DOORMAN in commerce in the alarm and security industry when they adopted the confusingly similar Video Doorman designation.

2. Defendants sought to work with Plaintiff in connection with the VIRTUAL DOORMAN product, but Plaintiff declined. Foster Affidavit at ¶ 11. Plaintiff declined to work with Defendants. Later Defendants sought to trade off of the goodwill already enjoyed by Plaintiff. Id. at ¶ 13.

3. Defendants adopted a confusingly similar designation – Video Doorman – that they have since tried to register in the United states Patent and Trademark Office ("USPTO")  See Defendants Ex. C;

4. Defendants have tried to create confusion in the marketplace by placing a trade article in commerce claiming *they* developed a product called Virtual Doorman™. Exhibit A to Am. Compl. (included in this motion as part of Defendants' Ex. B.)

In short, Defendants saw the success Plaintiff has had with the Virtual Doorman™ security system, and rather than developing its own goodwill and trademark, sought to capitalize on Plaintiff's hard earned reputation and position as an industry leader.

## Plaintiff's Federal Trademark Application

Plaintiff applied for a federal registration of VIRTUAL DOORMAN in the United States Patent and Trademark Office ("USPTO") in January 2006 in connection

with "security and surveillance systems and software, including closed circuit cameras, audio and video equipment, biometrics equipment and devices, televisions, monitors, electronic monitoring, alarm monitoring, intercom devices, remote entry and locking equipment, access-control equipment and sensors, equipment used in connection with remote operation of HVAC, lighting, elevators and similar internal systems, alarms, sirens, lights, development of software and equipment related to the foregoing, installation, consulting, maintenance, monitoring, and customization of the foregoing." *See* Defs' Ex. D.

The USPTO Trademark Examining Attorney issued an office action for Plaintiff's application, citing three Doorman-formative marks on the register that she felt might likely be confused with Plaintiff's VIRTUAL DOORMAN. One of these three citations was to Defendants' junior VIDEO DOORMAN mark, which, unbeknownst to Plaintiff, had been applied for 3 week earlier. *See* Defs' Ex. E. The Examining Attorney also cited DIGITAL DOORMAN (a registration in connection with handheld devices used by bouncers at bars to identify patrons) and THE DOORMAN (for automobile security systems) against Plaintiff's application. *Id*.

Notably, there are numerous DOORMAN-formative marks on the federal register, and perhaps even more marks using the term VIRTUAL. *See* Defs' Ex. E (setting forth numerous registered trademarks having the words "Doorman" or "Virtual" in them); moreover, the Examining Attorney did not object to registration of VIRTUAL DOORMAN on the basis that it was insufficiently distinctive, generic, or descriptive – known as a 2(e) objection. The Examining Attorney did not require any showing of acquired distinctiveness, indicating that that the mark was sufficiently distinctive to be

3

registered, if it overcame the likelihood of confusion objections (based on DIGITAL DOORMAN, THE DOORMAN, and VIDEO DOORMAN).  *Id.*[1]

At the time of the Office Action from the USPTO, Defendant American Security apparently had yet to use its mark, and was applying for registration based on a bona fide *intent to use* the mark in commerce.  See Ex. C.

### Plaintiff's Cease and Desist Letter

When Plaintiff discovered that Defendants sought to register the confusingly similar designation Video Doorman, it wrote a cease and desist letter to Defendants.   A copy of this letter is attached to Defendants' papers as Defendants' Ex. F.

Defendants responded through their attorney, who confused the marks VIDEO DOORMAN and VIRTUAL DOORMAN himself in his reply communication.  *See* Ex. G.  Defendants counsel stated that there are "wide unregulated uses of the term *VIDEO DOORMAN* by others as a name for [Virtual Service's] service."  *Id.*  While Defendants have since has claimed that the confusion was a simple clerical error, it underscores the similarity of the marks, and highlights the likely confusion amongst potential clients and others in the trade.

 The USPTO initially found that American Security's mark Video Doorman is confusingly similar to Plaintiff's, and is furthermore blocking Plaintiff's registration of VIRTUAL DOORMAN™ in connection with security and alarm systems.

---

[1] Disclaimers are common in trademark applications where one (or more) of the words making up the mark are commonly used on the register or in the field.  In such a case, it is very common for a mark to proceed to registration by disclaiming *exclusive* rights in and to one of the words.  The Video Doorman application is a case in point.  The Examining Attorney found VIDEO to be descriptive of the services, yet permitted the mark to proceed to registration despite the disclaimer, as the USPTO found VIDEO DOORMAN (together) to be sufficiently distinctive.  No showing of distinctiveness was required.

Plaintiff has sought to enforce its rights, Defendant is claiming either that (1) Plaintiff either adopted a generic mark for use in connection with its security systems, or (2) Plaintiff has somehow abandoned rights in and to the term by permitting uncontrolled use by competitors and others.

### Plaintiff Brought an Opposition in the USPTO and This Suit at Bar

As with that cease and desist letter, Defendants have taken a "kitchen sink" approach to defending themselves in this action.

In support of its arguments, Defendant presents evidence of third party trademark use of Virtual Doorman by parties in unrelated, non-confusingly similar fields, as well as numerous references of trademark use that name specifically Plaintiff.  Very little, if any of this use by competitors, apart from Defendants themselves.  Finally, the record shows substantial evidence that Plaintiff has established valuable trademark rights in VIRTUAL DOORMAN™ in the relevant consumer group:  builders, real estate developers and others in the trade.

Notably, Defendant does not and cannot show that Virtual Doorman was generic for use in connection with security and alarm systems in 2001, when Plaintiff adopted the mark, and it further cannot show sufficient evidence to meet its high burden to prove that Plaintiff has somehow abandoned the mark through uncontrolled third party use.

### Summary Judgment Standard

Summary judgment may only be granted if, drawing all inferences and ambiguities against the moving party, "there is no genuine issue as to any material fact . . . and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).  The burden on such a motion lies with the moving party,

5

and summary judgment is *only* proper in cases where reasonable minds cannot differ as to the evidence. *Id*. at 250-252 (emphasis added).

Terms used in connection with goods and services are classified into four categories for purposes of determining the level of trademark protection that may be claimed: (i) generic, (ii) descriptive, (iii) suggestive, and (iv) arbitrary or fanciful. *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075-76 (2d Cir. 1993); *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp.2d 208, 211 (S.D.N.Y. 2001). In order to be found "generic," "the *principal* significance of the word must be its indication of the nature of class of an article, rather than an indication of its origin.'" *Feathercombs, Inc., v. Solo Products, Corp.*, 306 F.2d 251, 256 (2d Cir. 1962)(emphasis added). Thus, generic terms principally name the genus of product, rather than to a particular brand of product; these terms are not protected under United States trademark law. *See Horizon Mills*, 161 F. Supp.2d at 211-12. The main reasons underlying the lack of trademark protection for generic terms is to prevent granting "the owner of a [generic] mark a monopoly [on the term], since a competitor could not describe his goods as what they are." *CES Publ'g Corp. v. St. Regis Publications*, 531 F.2d 11, 13 (2d Cir. 1975)(J. Friendly).

"Descriptive" marks are those that describe a particular thing, rather than being the proper name of the particular thing. "As between descriptive and generic terms, conventional wisdom holds that generic terms . . . are so useful to businesses selling the same product that no amount of money poured into promoting customers' association of generic terms with a particular source can justify 'depriv[ing] competing manufacturers of the product of the right to call an article by its name.'" *Abercrombie & Fitch Co. v.*

6

*Hunting World, Inc.* 537 F.2d 4, 9 (2d Cir. 1976). "Suggestive" marks are those that require the use of some imagination, thought, and perception to reach a conclusion as to the nature of the goods or services offered; "arbitrary" or "fanciful" marks are those that are either common words completely unrelated to the goods and services offered. *Horizon Mills*, 161 F. Supp.2d at 212, *citing Abercrombie & Fitch Co. v. Hunting World, Inc.* 537 F.2d 4, 10-11 (2d Cir. 1976). An example of a descriptive mark that has gained trademark protection is GOLD MEDAL RAISIN BRAN for cereal; an example of a suggestive mark is COPPERTONE for tanning lotion; an example of an arbitrary mark is APPLE for computers. Owners of suggestive marks do not have to show any acquired distinctiveness in order to have protection. *Citigroup Inc. v. City Holding Co*.171 F.Supp.2d 333, 345 (S.D.N.Y. 2001)(*citing Abercrombie*, 537 F.2d at 9-11.)

Determining the classification of a particular mark is a question of fact. *Bristol Meyers Squibb, Co. v. McNeil – PPC. Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992). In making this determination, however, it is not for the fact-finder to put itself in the place of the relevant public, but rather "to determine, based on the evidence before it, what the perception of the purchasing public is." *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337 (2d Cir. 1999)(affirming lower court's finding that mark not generic). Furthermore, the relevant "purchasing public" for purposes of genericness is *not* the population at large, but rather the prospective purchasers of the product." *Id.* at 345 (*citing Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 699 (2d Cir.1961)(emphasis added).

Evidence considered by a fact-finder to determine genericness includes: (1) Competitors' use of the term by competitors that has not been contested by Plaintiff; (2)

7

Plaintiff's own use; (3) dictionary definitions showing that the generic term is commonly known to name the particular genus of good; (4) media usage, and (5) consumer surveys. See

The burden of proof for a showing of genericness is mixed in this instance, as Defendants are making two separate arguments that Plaintiff's mark is generic. Defendants first argument is that the mark was generic in connection Plaintiff's goods and services *before* it was adopted by Plaintiff. In such an instance the burden would be on Plaintiff to prove otherwise, in the face of sufficient evidence by movant in support of its claim.

The second argument advanced by Defendant is that the mark has *become* generic after Plaintiff began using it. In the Second Circuit, courts have held that where a claim that an invented or coined word mark is originated by a mark owner, there is a "presumption of nongenericness," and the Defendants have the burdent to prove otherwise. *Murphy Door Bed Co. v. Interior Sleep Systems, Inc.,* 874 F.2d 95, (2d Cir. 1989)("Where the public is said to have expropriated a term established by a product developer, the burden is on the defendant to prove genericness.") Although here, the mark is not an invented or coined word, Plaintiff's use of VIRTUAL DOORMAN™ in connection with the particular type of security service, which technology only permitted in recent years, should be afforded similar treatment.

Regardless of the burden in this instance, Defendants make no showing that *anyone* used VIRTUAL DOORMAN™ *in the security and alarm industry* (or any industry, for that matter) prior to Plaintiff in such a common way as to render the mark generic.

Based on the evidence before the court, and drawing all inferences and ambiguities in favor of Plaintiff, it is clear that the mark is neither descriptive nor generic, but suggestive.  Furthermore, the record contains substantial evidence of proper trademark use of VIRTUAL DOORMAN, where consumers and the relevant target market recognize the term to identify Plaintiff as the sole source of the goods and services offered in connection with VIRTUAL DOORMAN™.  At the very least, there is a material dispute of fact as to whether the mark has become generic after Plaintiff adopted its use.

*Argument*

Defendants have put forth a tremendous amount of irrelevant evidence in order to support their contention that Plaintiff's mark VIRTUAL DOORMAN was either (a) generic when Plaintiff adopted it in 2001, or (b) it became generic through competitors' or others' use of the mark.  They have not met their burden under either theory.

**A.  Defendant Has Not Offered Sufficient Evidence That Plaintiff's Mark VIRTUAL DOORMAN™ Was Generic Prior To Plaintiff's Development Of The Mark In 2001 In Connection With The Security And Alarm Industry.**

Defendants cite only three pieces of evidence predating Plaintiff's use of the mark VIRTUAL DOORMAN™ in connection with security and alarm systems:

Defendants' Exhibits Y & Z, which are articles about a "Virtual Doorman" service offered by non-competitors of Plaintiff (and, for that matter, Defendants).  These Exhibits are two of many that seek to conflate UPS' "Virtual Doorman" Service with Plaintiff's state-of-the-art alarm and security systems.  It is a basic tenet of trademark law that even identical marks are not infringing where they are used in separate fields.

9

Upon quick examination, it is clear that UPS (and Mail Boxes Etc. ("MBE") – the company acquired by UPS) is not offering the same product for $15 dollars setup and $30/month (as set forth in Exhibit Y) to the same consumers that Plaintiff offers its $50,000 -$80,000 systems.  *See* Foster Decl. at ¶ 7.   UPS and MBE are in the overnight courier/package delivery business while the parties at hand are both involved in the security and alarm industry.  Furthermore, there is no threat that either UPS or Virtual Service will enter the other's field; they do not operate in the same channels of trade, and simply have nothing to do with one another.  Defendants' assertion that UPS (and MBE's) trademark use of "Virtual Doorman" could make Plaintiff's use generic is unsupported by any case law or evidence; in fact, it is like saying that somehow evidence relating to SUNBEAM for electric appliances would relate to the trademark rights of SUNBEAM for bread.

Therefore, all of the Defendants' exhibits in connection with UPS and Mail Boxes Etc. (MBE) are irrelevant and should not be considered for purposes of this motion.

The single other piece of pre-2001 evidence offered by Defendants is Defendants' Exhibit QQ, which also involves package delivery.  Furthermore, as a further indicator that the term "virtual doorman" is not generic and *commonly* understood by the public to have a particular meaning, it is in quotations in Exhibit QQ, demonstrating its lack of common meaning to the public.[2]

Based on this evidence, no reasonable finder of fact could determine that VIRTUAL DOORMAN™ was generic prior to Plaintiff's adoption of the mark.

---

[2] The term "Virtual Doorman" is also in quotations in Exhibit Y, indicating that it is not a common term understood by the public.

10

**B. Defendant Has Not Offered Sufficient Evidence
That Plaintiff's Mark VIRTUAL DOORMAN™ Has
Become Generic In Connection With The Security
And Alarm Industry.**

Again, as set forth above, Defendants' Citation to the use of VIRTUAL DOORMAN™ in connection with overnight mail services and package delivery by UPS and MBE is irrelevant; therefore, Exhibits AA-LL (or 12 of its 24 exhibits purportedly showing genericness) should be disregarded as wholly irrelevant and unhelpful to the finder of fact.

Furthermore, Defendants' arguments are self-defeating; by insisting that Virtual Doorman carries a primary meaning of drop-off mail and overnight delivery, it implicitly admits that the public does not *primarily* understand VIRTUAL DOORMAN to be used in connection with the security and alarm industry. The use of Virtual Doorman™ by UPS and MBE (related entities, as set forth in Defendant's Ex. Z) is trademark use, as it designates a particular service. UPS' use of Virtual Doorman as a suggestive brand name for its package drop-off service is simply not relevant to Plaintiff's long standing use of VIRTUAL DOORMAN for alarm, security and monitoring services for buildings. C

Furthermore, several of Defendants' other Exhibits are irrelevant, such as Defendants' Exhibits OO and PP are unrelated to the security system industry, and do not even constitute use of the term "VIRTUAL DOORMAN" in the United States. *See Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631(8th Cir. 1984)(affirming lower court's ruling that mark's usage in Australia irrelevant for purposes of determination of genericness in United States); *Seiko Sporting Goods USA, Inc. v. Kabushiki Kaisha Hattori Tokeiten,* 545 F.Supp. 221 (S.D.N.Y. 1982).

11

### C. Practically All of Defendant's Citations Are to Plaintiff's Systems, Showing that There are Very Few Instances of Competitor's Use of its Marks.

As set forth in the Affidavit of Colin Foster in Para. 14, practically none of Defendants' Exhibits show any evidence of competitors' use, OR use that would indicate that VIRTUAL DOORMAN™ is a commonly understood term to the relevant consumer group, i.e. builders, developers, contractors or building owners:

1. Defendants' Exhibit I, the April 22, 2001 article from the New York Times refers to a "virtual doorman" system. This system was originally installed by Virtual Service, the Plaintiff in this action, and the fact that it is in quotation marks implies that it is an unfamiliar term.

2. Defendants' Exhibit J, the June 12, 2007 BusinessWeek article is entirely about Plaintiff. Again, the article contains use of the capitalized "Virtual Doorman" as a proper product name in several places in the article. Nothing in this article could lead a reasonable fact-finder to believe that the relevant purchasing public believed the mark to be generic.

3. Defendants' Exhibit K, the article from the Cooperator Co-op & Condo Monthly indicates that Virtual Service "produces the *trademarked* Virtual Doorman." (emphasis added). This article actually goes out of its way to indicate that VIRTUAL DOORMAN™ is plaintiff's Trademark.

4. Defendants' Exhibit M at 135 W. 14th Street, is a Virtual Doorman™ System installed by Plaintiff.

5. Defendants' Exhibit N, 133 West 4th Street is a security system installed by Virtual Service. It is currently not serviced by Plaintiff, and Corcoran has been notified to retract the use of Virtual Service's trademark accordingly.

6. Defendants' Exhibit P, 50 West 127th Street is a Virtual Service VIRTUAL DOORMAN™ System.

7. Defendants' Exhibit Q, 283 West Broadway is a Virtual Service VIRTUAL DOORMAN™ System.

8. Defendants' Exhibit R, 479 West 152nd Street is a Virtual Service VIRTUAL DOORMAN™ System.

9. Defendants' Exhibit S, is the same address and building as Exhibit R, 479 West 152nd Street is a Virtual Service VIRTUAL DOORMAN™ System.

10. Defendants' Exhibit T is the same address as Exhibit M, above, and is Plaintiff's VIRTUAL DOORMAN™ System.

11. Defendants' Exhibit U is Plaintiff's VIRTUAL DOORMAN™ System.

12. Defendants' Exhibit V appears to be Plaintiff's VIRTUAL DOORMAN™ System, because Plaintiff has several VIRTUAL DOORMAN™ Systems installed near the corner of Jane and Greenwich, but because the exact address is not present, I cannot be certain.

13. Defendants' Exhibit W may be Plaintiff's system, however at this point it is unclear. I have contacted The Commons to indicate that if they are not using Plaintiff's VIRTUAL DOORMAN™ System, they must remove the term from their website.

14. Defendants' Exhibit X, the Woods at Newtown, is a property that was deciding whether to install either Virtual Service's VIRTUAL DOORMAN™ or its competitor, Cyberdoorman's system. That is why the text reads: "A virtual or cyber doorman system will work as a remote attendant . . ." The Woods has also been contacted to inform them that they will not be permitted to use the term VIRTUAL DOORMAN™ unless they install Plaintiff's VIRTUAL DOORMAN™ System.

15. Defendants' Exhibit RR references Plaintiff's VIRTUAL DOORMAN™ System installed at 163 Charles Street.

When the "evidence" attached to Defendants' motion is stripped away, it is clear that they have not done sufficient due diligence in connection with this matter, and

simply sought to confuse the issue by including irrelevant and non-probative materials in order to continue to damage Plaintiff.

Defendants' motion, in essence rests on a few bits of evidence, primarily an article in late December 2007 in which the New York Times improperly used "VIRTUAL DOORMAN." This use was picked up by several blogs Defendants' cite, such as Defendants' Exhibits MM and NN. Even exhibit MM, however has a comment section that indicates that users are aware that VIRTUAL DOORMAN™ is not generic – a commenter named captainnoah capitalizes "Virtual Doorman" – indicating that he believes it to be a proper name of a product.

In sum, Defendants' motion rests essentially on a single article and its offshoots, as well as a handful of uses by real estate brokers, whose use Virtual Service already has undertaken to remedy. Foster Decl. at ¶ 15.

**D. The record Reflects Substantial Proper Trademark Use
and Recognition of VIRTUAL DOORMAN™ as a Trademark.**

As set forth in the Declaration of Nicholas LaPorte, persons in the industry (i.e. the relevant public) recognize Virtual Service to be the source of the VIRTUAL DOORMAN™ Product. LaPorte Decl. ¶¶ 9-10.

Furthermore, industry trade journals show that VIRTUAL DOORMAN™ is recognized to be a trademarked product name:

- "Developrers are installing systems like Virtual Doorman(tm)."    See Pltf.'s Ex. 1, *Security Products*: Hip to be Small.

- "Colin Foster is the vice president of sales and marketing for Virtual Doorman [(capitalized)], the top product of a security firm called Virtual Service. Pltf.'s Ex. 2. Bridge and Tunnel Blog, dated August 23, 2007.

14

- "Virtual Service is reshaping the role of the traditional doorman with the launch of the latest *version* of its flagship *product* Virtual Doorman." See Pltf.'s Ex. 3. New York Real Estate Journal, dated June 12, 2007.

- "A security company has developed an electronic system, Virtual Doorman, that it claims can perform the functions of human doormen, "including screeing guests, accepting deliveries and laundry, and unlocking doors for tenants who lost their keys. [amNew York]" See Pltf.'s Ex. 4. New York Times, October 9, 2007 N.Y./Region.

- "BusinessWeek notes that New York-based Virtual Service announced an upgrade to its "'Virtual Doorman.'" See Pltf.'s Ex. 5. New York Times Deal Book, June 12, 2007.

- "Virtual Doorman 'has given us an edge over other buildings' said Ross Berman, a partner *with real estate developer Citiwise LLC*. . . . . Jeff Bennett, *who owns buildings in Manhattan*, said he can seek higher rents in his two Virtual Doorman buildings." amNew York, August 23, 2007 (emphasis added).

This trademark use, capitalized, put in quotations, and properly referred to by the trade and the relevant consumer indicates that Virtual Doorman is a suggestive mark that merits protection under the Lanham Act.

It is further notable that Defendants have claimed that VIRTUAL DOORMAN is their product, and have used the mark claiming the trademark symbol. develop[ed] a high-brid [sic] Integrated video/access control product call [sic] *Virtual* Doorman." See Ex. A to Am. Compl. It is anticipated that discovery will show that this article was written by Defendants, who improperly claim to have developed the capitalized (and trademarked) Virtual Doorman™.

In further support of the Plaintiff's Opposition, and as set forth above, the USPTO Examiner did not object to the registration of VIRTUAL DOORMAN (or, for that matter, Video Doorman) based on a claim of descriptiveness or genericness. This is highly probative that VIRTUAL DOORMAN is indeed suggestive of technologically

innovative security and luxury. *See Genessee Brewing Co.,* 124 F.3d 137 148 fn. 11 (2d Cir. 1997)("While it is true that

The mark has yet to be registered, and therefore is not entitled to the statutory presumption of validity, . . we nonetheless, accord weight to the initial conclusions of the Trademark Office."); D.M & Antique Import Corp. v. Royal Saxe Corp., 311 F. Supp. 1261, 1274 (S.D.N.Y. 1970)("finding in the absence of a registered trademark, that the expertise of the trademark examiners does entitled their views to respectful consideration.").

## Conclusion

Even if the Court accepts, without any Defendants' non-probative exhibits as indicia that the mark is generic, there is substantial proper trademark use and industry recognition to overcome the Defendants' assertions and permit discovery to continue in this matter.

Dated: June 16, 2008
New York, New York

Respectfully submitted,

ZEYNEL KARCIOGLU, ESQ.

_____/s/_____
Zeynel Karcioglu (ZK 7931)
*Attorney for Plaintiff*
Future Communications Corporation
of New York d/b/a Virtual Service

36 East 20th Street, 6th Fl
New York, New York 10003
Tel. 212-505-6933
Fax 646-219-4517