UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————x

FUTURE COMMUNICATIONS CORPORATION      08-cv-01997 (JGK)
OF NEW YORK d/b/a VIRTUAL SERVICE

                       Plaintiff,

     -against-                                   Declaration of Colin Foster

AMERICAN SECURITY SYSTEMS, INC.,
and LAWRENCE T. DOLIN
                       Defendant
———————————————————x

I, Colin Foster, hereby declare and say:

1.     I make this declaration upon my own personal knowledge and experience. I am the president and director of sales and marketing for Plaintiff Future Communications Corporation of New York d/b/a Virtual Service ("Virtual Service").

2.     I have been in the security and alarm systems industry for approximately 10 years.

3.     The VIRTUAL DOORMAN™ System is the flagship product of the Plaintiff in this action.

4.     Virtual Service has been using the mark VIRTUAL DOORMAN™ in connection with integrated security and alarm systems for approximately 7 years.

5.     In addition to VIRTUAL DOORMAN™ Plaintiff has used an image of a doorman, as well as the slogans "the same services as a doorman - at a fraction of the cost," "total security integration" and "technology for easy living" for many years, dating at least back to the early 2000's.

1

6. The VIRTUAL DOORMAN™ System uses a variety of technologies, including CCTV, access control, video intercoms and smart home technology all to enable building owners to secure, remotely monitor and control access to their buildings.

7. Virtual Service markets the VIRTUAL DOORMAN™ System to high-net worth residential house owners, as well as real estate developers and construction companies, and others in the building trade. Virtual Service typically does not market the VIRTUAL DOORMAN™ System to individual tenants (or unit owners in buildings) because the VIRTUAL DOORMAN™ System is designed to be a building-wide system, integrated with the overall security systems of the building, and provides remote access to the building.

8. Virtual Service has presented the VIRTUAL DOORMAN™ System to numerous builders and real estate developers, including members of the Associated Builders and Owners of Greater New York ("ABO"), Brunelleschi Construction, Ball Construction, and other similar companies.

9. Plaintiff has spent in excess of $250,000 marketing VIRTUAL DOORMAN™ over the past 7 years.

10. On average, the VIRTUAL DOORMAN™ security system costs approximately $50,000 - $80,000 for installation, equipment and service, and has become very popular in the industry. The cost of each system depends upon the various features desired; Virtual Service can install biometric identification systems, key cards systems and integrated systems that remotely control the buildings' locks and doors, opening and closing of the doors, lighting, and HVAC as well as fire and burglar alarm systems, depending on the building owners' needs.

11. In 2004, Plaintiff was showing its wares and services at a tradeshow. An employee of Defendant American Security approached Plaintiff to inquire about how the

companies could work together and market or service the VIRTUAL DOORMAN™ product, which was prominently on display at the trade show. Virtual Service did not feel that the discussion would lead to a fruitful result and declined to have any further discussions with Defendant American Security about VIRTUAL DOORMAN™.

12. Plaintiff is in the security and advanced alarm systems business, and is not in the overnight mail/courier business, and has no intention of entering the latter field. Furthermore, due to the vast difference in goods and services, channels of trade, cost, and sophistication of consumers, there is little, if any, chance of consumer confusion with respect to UPS (and MBE)'s Virtual Doorman™ service where persons go to those locations to pick up packages delivered by overnight mail to various UPS locations.

13. Defendants' relatively new entry into this marketplace has caused confusion among clients and potential clients of Virtual Service, who have expressed confusion as to whether Video Doorman is connected with, or sponsored by Virtual Service, or whether the goods and services are identical. I have seen proposals submitted by Defendants to prospective customers, labeling their product "virtual doorman." Defendants' use of this term in its marketing materials as a competitor is willful and intentional and in bad faith, and serves to confuse prospective clients as to the origin of the VIRTUAL DOORMAN™ product and services.

14. Almost all of the relevant Exhibits submitted by Defendants in support of their motion refer to Plaintiff's unique VIRTUAL DOORMAN™ Systems; other references are unrelated:

    a. Defendants' Exhibit I, the April 22, 2001 article from the New York Times refers to a "virtual doorman" system (in quotes). This system was originally installed by Virtual Service, the Plaintiff in this action.

3

    b. Defendants' Exhibit J, the June 12, 2007 BusinessWeek article is about Virtual Service, the Plaintiff in this action; furthermore, the article contains use of the capitalized "Virtual Doorman" as a proper product name in several places in the article.

    c. Defendants' Exhibit K, the article from the Cooperator Co-op & Condo Monthly indicates that Virtual Service "produces the *trademarked* Virtual Doorman." (emphasis added).

    d. Defendants' Exhibit M at 135 W. 14th Street, is a Virtual Doorman™ System installed by Plaintiff.

    e. Defendants' Exhibit N, 133 West 4th Street is a security system installed by Virtual Service. It is currently not serviced by Plaintiff, and Corcoran has been notified to retract the use of Virtual Service's trademark accordingly.

    f. Defendants' Exhibit P, 50 West 127th Street is a Virtual Service VIRTUAL DOORMAN™ System.

    g. Defendants' Exhibit Q, 283 West Broadway is a Virtual Service VIRTUAL DOORMAN™ System.

    h. Defendants' Exhibit R, 479 West 152nd Street is a Virtual Service VIRTUAL DOORMAN™ System.

    i. Defendants' Exhibit S, is the same address and building as Exhibit R, 479 West 152nd Street is a Virtual Service VIRTUAL DOORMAN™ System.

    j. Defendants' Exhibit T is the same address as Exhibit M, above, and is Plaintiff's VIRTUAL DOORMAN™ System.

    k. Defendants' Exhibit U is Plaintiff's VIRTUAL DOORMAN™ System.

    l. Defendants' Exhibit V appears to be Plaintiff's VIRTUAL DOORMAN™ System, because Plaintiff has several VIRTUAL DOORMAN™ Systems installed near the corner of Jane and Greenwich, but because the exact address is not present, I cannot be certain.

    m. Defendants' Exhibit W may be Plaintiff's system, however at this point it is unclear. I have contacted The Commons to indicate that if they are not using Plaintiff's VIRTUAL DOORMAN™ System, they must remove the term

from their website.

n. Defendants' Exhibit X, the Woods at Newtown, is a property that was deciding whether to install either Virtual Service's VIRTUAL DOORMAN™ or its competitor, Cyberdoorman's system. That is why the text reads: "A virtual or cyber doorman system will work as a remote attendant . . ." The Woods has also been contacted to inform them that they will not be permitted to use the term VIRTUAL DOORMAN™ unless they install Plaintiff's VIRTUAL DOORMAN™ System.

o. Defendants' Exhibits Y – KK reference UPS and/or MBE (formely Mail Boxes Etc.); this use of VIRTUAL DOORMAN appears to be trademark use in connection with, services unrelated to the security system and technologically advanced alarm business. This service appears to be a service where the UPS Store signs for delivery of a package for you off-site for a fee of $5-10 per package. (See, e.g. Exhibit KK). This is a completely unrelated service to our alarm and security services, and we do not compete with UPS or MBE in any way.

p. Defendants' Exhibit QQ references another package delivery service, not a secure, integarated, remotely monitored building security system. Again, as in many of these examples, the term "virtual doorman" is in quotations, showing that it is not a familiar term. Furthermore, this use is not confusingly similar to, or in similar channels of trade with Plaintiff's VIRTUAL DOORMAN™ System.

q. Defendants' Exhibit RR references Plaintiff's VIRTUAL DOORMAN™ System installed at 163 Charles Street.

15. Virtual Service monitors unauthorized use of VIRTUAL DOORMAN, and contacts unauthorized users and informs them of Plaintiff's trademark rights in and to VIRTUAL DOORMAN™. On several occasions the use has ceased, and Virtual Service has received apologies for the improper use.

16. Exhibit A to the Plaintiff's Amended Complaint is an article written by Jeff Brummett, of American Sentry Guard, a company that services Defendants' security systems.

5

This article was likely placed in the trade magazine by Defendants or their agents, who claim in the article to have "develop[ed] a high-brid [sic] Integrated video/access control product call [sic] *Virtual* Doorman." It is anticipated that discovery will show that this article was written by Defendants, who improperly claim to have developed the capitalized (and trademarked) Virtual Doorman™.

17. I make this declaration, which I know to be true and correct, under penalty of perjury.

New York, NY

Executed this 16th day of June, 2008.

*[signature]*
Colin Foster